GREGORY A. BLUE, P.C.
405 Lexington Avenue, Suite 2600
New York, New York 10174
Telephone: (646) 351-0006
Facsimile: (212) 208-6874
Email: blue@bluelegal.us

*Attorney for Plaintiff Weiwei Gao*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEIWEI GAO,<br><br>Plaintiff,<br><br>- against -<br><br>GARY SIDHU, a/k/a "Harp"; AMARJIT SIDHU; and SARBJIT GILL,<br><br>Defendants. | **1:11-cv-02711-WHP**<br>**ECF CASE**<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

WEIWEI GAO ("Plaintiff"), by and through her undersigned attorney, as and for her Original Complaint against GARY SIDHU, a/k/a "Harp" ("Sidhu"), AMARJIT SIDHU ("Amarjit Sidhu"), and SARBJIT GILL ("Gill") (collectively, "Defendants"), respectfully alleges as follows:

**Nature of the Action**

1.      In October 2010, Plaintiff Weiwei Gao, through her US-based representative, Zhi Yang, approached Defendant Gary "Harp" Sidhu about a business opportunity, namely a reverse merger between a successful Chinese real estate company and a publicly-traded American company to be identified and vetted by Sidhu.

2.     As a result of those discussions, Weiwei Gao and Sidhu entered into a written "Fee Sharing Agreement," which provided that Weiwei Gao would introduce Sidhu to the Chinese company, through the company's financial advisors, and Sidhu would identify an appropriate public company with tradable, SEC-registered, securities, and also work to consummate the merger as contemplated.

3.     Under the Fee Sharing Agreement, Sidhu was to be compensated for his services by receiving two percent (2%) of the equity of the post-merger company, retaining 50,000 of those shares (on a split-adjusted basis), and delivering (or causing to be delivered) the balance of the two percent (2%) stake to Weiwei Gao as her fee.

4.     Weiwei Gao performed under the contract; Sidhu did not. In fact, while Sidhu fraudulently and intentionally misrepresented to Weiwei Gao, both in the Fee Sharing Agreement and otherwise, that he would transfer post-merger securities to Weiwei Gao in connection with the merger, he had no intention to do so.  Once the merger was closed as contemplated by the parties, Sidhu diverted the two percent (2%) stake to a family member, Amarjit Sidhu, and his business partner, Sarbjit Gill.

5.     In lying to Weiwei Gao about the merger, the post-merger equity ownership of the merged company, and the distribution of registered securities in connection with the closing of the merger, Sidhu violated the federal securities laws by making false statements of material fact, and making material omissions, in connection with the purchase and sale of securities.  He also breached the Fee Sharing Agreement, and fraudulently transferred securities to the other defendants with the actual intent to hinder, delay, or defraud his creditor, Weiwei Gao.

6.      Plaintiff is entitled to be compensated for her contribution to the merger in accordance with the Fee Sharing Agreement, for compensation for Sidhu's violations of the federal securities laws, and to avoid the fraudulent transfer of shares from Sidhu to the other defendants.

## Parties

7.      Plaintiff Weiwei Gao is a citizen of the People's Republic of China, with an address at Huangshan Road, Jingsexiaoqu, Building 1, Room 114, Baohe District, Hefei, Anhui, PRC.

8.      Upon information and belief, Defendant Sidhu is a citizen of Canada, with an address at 9567 Nairn Place, Surrey, British Columbia, V3V 6Y4 Canada.

9.      Upon information and belief, Defendant Amarjit Sidhu is a citizen of Canada, with an address at 9567 Nairn Place, Surrey, British Columbia V3V 6Y4, Canada.  Upon information and belief, Amarjit Sidhu and Gary Sidhu are related.

10.      Upon information and belief, Defendant Gill is a citizen of Canada, with an address at 9396-133A Street, Surrey, BC V3V 5R7 Canada.  Upon information and belief, Gill is Sidhu's business partner.

## Jurisdiction and Venue

11. This Court has subject matter jurisdiction over Plaintiff's federal securities law claims pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.

12. As described more fully below, the transaction(s) at issue had a substantial effect in the United States.  By intent and design, the contemplated and consummated merger transaction necessarily involved a company incorporated in the United States,

with securities registered with the Securities and Exchange Commission.  The Fee

Sharing Agreement determined the ownership of a substantial equity stake in the post-

merger, SEC-regulated company.  Moreover, all of the communications between

Plaintiff's US-based representative, Zhi Yang, and Sidhu were conducted through the

instrumentalities of interstate commerce located wholly or partially within the United

States, including but not limited to telephones, emails, and facsimile transmissions.  All

of Sidhu's representations and, more significantly, misrepresentations, were directed to

Zhi Yang in the United States through these instrumentalities of interstate commerce.

Both Zhi Yang and Sidhu worked closely with the Chinese company's US-based

financial advisor, which received approximately thirteen percent (13%) of the equity in

the post-merger company.  Finally, substantially all of the legal services in connection

with the merger were rendered by an American law firm, Philadelphia-based Stevens &

Lee.

13. This Court has supplemental subject matter jurisdiction over the remaining

claims in this action pursuant to 28 U.S.C. § 1367 because such non-federal law claims

are so related to the federal law claims that they form part of the same case or

controversy under Article III of the United States Constitution.

14. This Court has personal jurisdiction over each of the Defendants:

(a)     this Court has personal jurisdiction over Sidhu pursuant to the Fee

Sharing Agreement because Sidhu affirmatively submitted to the

jurisdiction of courts in the State of New York for the resolution of

disputes in connection with the Fee Sharing Agreement;

(b)     this Court has personal jurisdiction over all of the Defendants

because of their involvement in a violation of the federal securities

laws, the effect of their actions and their violation(s) of the

securities laws in the United States, and the Defendants' contacts

with the United States and with the forum.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(d).

**Facts Common to All Causes of Action**

16. In or about the autumn of 2010, Weiwei Gao, through her representative, Zhi Yang, approached Sidhu concerning a business proposal.  At all relevant times, Zhi Yang resided and worked in the United States.

17. Zhi Yang asked Sidhu if he could locate an appropriate public company to be merged with a Chinese company, Chongqing Zhongbao Investment (Group) Stock Co., Ltd. ("Zhongbao"), seeking to go public in the United States through a reverse merger.

18. When Sidhu indicated that he was willing to participate in the transaction, Zhi Yang indicated that Weiwei Gao would make the introduction and facilitate the transaction, and would need to receive a fee in consideration of her efforts to accomplish the reverse merger.

19. Sidhu agreed to the proposal as outlined by Zhi Yang, and Zhi Yang committed the agreement to writing in a "Fee Sharing Agreement" dated as of October 29, 2010, which was transmitted by Zhi Yang to Sidhu by email on that date.

20. The Fee Sharing Agreement provided that the parties would work to accomplish a reverse merger for Zhongbao.

5

21. Under the Fee Sharing Agreement, Weiwei Gao was to introduce Sidhu to Zhongbao's financial advisor through Zhi Yang.

22. Sidhu was required to find an appropriate reverse-merger partner for Zhongbao, and provide related documents and materials for Zhongbao's financial advisor to perform due diligence through Zhongbao's US legal counsel, Stevens & Lee.

23. In consideration of their mutual obligations under the Fee Sharing Agreement, the parties Weiwei Gao and Sidhu agreed that Sidhu would charge Zhongbao a fee in connection with his services, and that Sidhu, in turn, would share those fees with Weiwei Gao. Specifically, the Fee Sharing Agreement provided that Sidhu would receive two-percent (2%) of the post-merger company's equity. Then, after a share split, Sidhu would retain 50,000 (post-merger, post-split) shares and transfer the remainder of that two-percent (2%) stake to Weiwei Gao.

24. On November 2, 2010, Sidhu indicated by email to Zhi Yang that he would return the signed Fee Sharing Agreement to Zhi Yang by facsimile that day. Late that day, Sidhu returned his signature page to Zhi Yang by facsimile.

25. Weiwei Gao made the introduction between Sidhu and Zhongbao's financial advisor through Zhi Yang, and Sidhu identified an appropriate reverse merger partner for Zhongbao, namely FitwayVitamins, Inc. ("Fitway"), a Nevada Corporation. Fitway's common stock was registered with the Securities and Exchange Commission pursuant to the Securities act of 1933 and tradable on the Over The Counter Bulletin Board.

26. According to the plan developed by the parties to the transaction, including Zhi Yang, working on behalf of Weiwei Gao, Zhongbao's equity owner would

6

receive eighty-five percent (85%) of the equity in the post-merger company. Sidhu would distribute the remaining fifteen percent (15%) as follows: (a) thirteen percent (13%) to Zhongbao's financial advisors and their designees, according to their direction; and (b) two percent (2%), to be divided among: (i) the pre-merger shareholders of Fitway; (ii) Sidhu; and (iii) Weiwei Gao in accordance with the Fee Sharing Agreement.

27. According to the structure developed in advance of the merger, in consultation with Zhi Yang, upon closing the post-merger company would have 1,901,366 shares of common stock outstanding. Eighty-five percent (85%) of the common stock (1,616,161 shares) would be owned by Haoji Xia, Zhongbao's pre-merger equity owner.

28. In advance of the closing for the merger, Zhi Yang provided Sidhu with information concerning the identity and address of each of the individuals who were to receive the remaining fifteen percent (15%) of the outstanding common stock, as well as the total number of shares that each should receive. In accordance with the structure contemplated by the Fee Sharing Agreement, Zhi Yang's distribution list indicated that two percent (2%) of the company's outstanding stock would be split among the original shareholders of Fitway, Sidhu, and Weiwei Gao. Specifically, Zhi Yang indicated that Sidhu and the original 30 shareholders would collectively receive 3,333 pre-split (49,995 post-split) shares, of which 210 would be distributed equally among the original shareholders and 3,123 would be distributed to Sidhu. Zhi Yang's distribution list also indicated that the balance of the two percent (2%) allocable to Sidhu would, in accordance with the Fee Sharing Agreement, be distributed to Weiwei Gao, who would then receive 34,775 post-merger, pre-split shares.

29.  Prior to the closing of the merger, Sidhu never indicated that he believed Weiwei Gao was not entitled to receive shares, never repudiated the Fee Sharing Agreement, and never indicated that Zhi Yang's distribution list contained the names of anyone not entitled to receive shares, or omitted the names of anyone who was entitled to receive shares.

30.  As a result of Weiwei Gao's introduction, the merger between Zhongbao and Fitway was consummated on or about February 11, 2011.

31. On February 14, 2011, Zhi Yang sent an email to Sidhu directing Sidhu to send stock certificates to the individuals identified in Zhi Yang's distribution list, including Weiwei Gao, in the amounts specified.  Zhi Yang specifically indicated that Weiwei Gao should receive 34,775 shares.   Zhi Yang's email instructed Sidhu to "please get it [the stock transfer] done."  Shortly thereafter, Sidhu responded by email, "Yes. Call you later today."  In that communication, Sidhu did not suggest that Weiwei Gao was not entitled to receive securities in accordance with Zhi Yang's allocation.  Sidhu, however, did not call.

32. As of February 15, 2011, Sidhu still had not caused the transfer of stock certificates in accordance with Zhi Yang's allocation.  On that date, Zhi Yang twice contacted Sidhu by email, and Sidhu responded by suggesting a telephone call the next day. In that communication, Sidhu did not suggest that Weiwei Gao was not entitled to receive securities in accordance with Zhi Yang's allocation.

33. As of February 19, 2011, Sidhu still had not caused the transfer of stock certificates in accordance with Zhi Yang's allocation.   On that date, Zhi Yang once again transmitted the final distribution list to Sidhu.  In response, after receiving the same list

from Zhi Yang multiple times, Sidhu stated that "The numbers are incorrect." Sidhu requested that Zhi Yang "send a new list. (98%)." This was the first time that Sidhu ever suggested that he disagreed with the allocation provided by Zhi Yang. Significantly, though, while Sidhu suggested that the *numbers* of shares were incorrect, Sidhu did not, state that he had any disagreement with the *identity* of the individuals that Zhi Yang indicated should receive securities.

34. Zhi Yang immediately responded to Sidhu's February 19 email by insisting that the numbers and allocation were correct and reiterating that shares should be distributed in accordance with the share distribution list that he had provided and Fee Sharing Agreement. Sidhu then stopped responding to Zhi Yang's telephone calls and emails.

35. Unbeknownst to Zhi Yang at the time, Sidhu on February 28, 2011, transferred, or caused to be transferred, 35,159 shares (1.849% of the equity) to his business partner, Gill, who was not on the list provided to Sidhu by Zhi Yang. Sidhu did not inform Zhi Yang that Gill received or would receive those securities. Significantly, Sidhu did not at that time cause the transfer of any of the remaining securities to any of the individuals on the list provided by Zhi Yang. On February 28, 2011, Sidhu transferred the shares *only* to his business partner.

36. Thereafter, on or about March 9, 2011, Sidhu caused a distribution of the remaining securities substantially in accordance with the allocation provided by Zhi Yang, *except* Weiwei Gao received no securities, and Defendant Amarjit Sidhu, who also was not identified on Zhi Yang's allocation received 2,868 shares (0.151% of total equity). Thus, instead of dividing two percent of the equity in the post-merger company

among himself, the original shareholders of Fitway, and Weiwei Gao, as Sidhu was required to do under the Fee Sharing Agreement and Zhi Yang's allocation, Sidhu transferred two percent (2%) of the equity of the post-merger company to his family member, Amarjit Sidhu, and his business partner, Gill.

**First Cause of Action:**
**Breach of Contract**
**(Against Gary Sidhu)**

37. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs, which are incorporated herein.

38. The Fee Sharing Agreement was a binding contract between Plaintiff and Defendant Sidhu.

39. Plaintiff performed all of her obligations under the Fee Sharing Agreement.

40. All conditions precedent under the Fee Sharing Agreement were satisfied.

41. Defendant Sidhu failed to perform his obligations under the Fee Sharing Agreement in that he failed to deliver securities to Plaintiff in accordance with the Fee Sharing Agreement.

42. Defendant Sidhu also breached the duty of good faith and fair dealing implied in the Fee Sharing Agreement by failing to inform Plaintiff that he had no intention to deliver securities to her, even when it was explicitly clear that Plaintiff, in accordance with the terms of the Fee Sharing Agreement, was expecting to receive such shares upon consummation of the merger.

43. By virtue of the foregoing, Defendant Sidhu breached the Fee Sharing Agreement.

44. By virtue of the foregoing, Plaintiff is entitled to one or more of the following remedies:

(a)     judgment in favor of the Plaintiff, and against Defendant Sidhu, requiring specific performance of the Fee Sharing Agreement, i.e. requiring Sidhu to transfer to Plaintiff split-adjusted securities in the Merged Company equal in number to the securities that Plaintiff was entitled to receive under the Fee Sharing Agreement;

(b)     imposition of a constructive trust over the securities unlawfully transferred by Sidhu to Amarjit Sidhu and Gill; and/or

(c)     damages, to be determined at trial, in an amount equal to the value of the securities that Plaintiff was entitled to receive pursuant to the Fee Sharing Agreement; plus

(d)     costs and attorneys' fees as provided for in the Fee Sharing Agreement;

(e)     pre- and post-judgment interest to the fullest extent permitted by law; and

(f)     such other relief as this Court deems just and proper.

**Second Cause of Action:**
**Violation of Section 10(b) of the Securities Exchange Act of 1934**
**<u>and Securities and Exchange Commission Rule 10b-5</u>**
**(Against Gary Sidhu)**

45. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs, which are incorporated herein.

46. By reason of the conduct alleged herein, Defendant Sidhu engaged in fraud in connection with the purchase or sale of securities, as prohibited by Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)") and Securities and Exchange Commission Rule 10b-5 ("Rule 10b-5").

47. Specifically, in the Fee Sharing Agreement, Sidhu affirmatively represented that he would receive only 50,000 shares (calculated on a post-split basis, in light of the contemplated 15-1 stock split) and would transfer the balance of the two percent (2%) equity interest to Weiwei Gao.

48. That representation was false when made because, upon information and belief, Sidhu had no intention of transferring shares to Weiwei Gao at the time that he made the promise to do so.

49. Sidhu also committed fraud in connection with the purchase or sale of securities by remaining silent as to Weiwei Gao's entitlement to receive securities when Zhi Yang repeatedly informed Sidhu that Weiwei Gao should receive stock in connection with the merger. On several occasions, Zhi Yang provided Sidhu with a list of distributees of the securities, identifying the name and address of each intended recipient of securities in connection with the Merger and the number of shares that each was to receive.  Plaintiff's name appeared on those lists, along with the number of shares that Plaintiff was to receive.

50. However, each of the several times Zhi Yang transmitted information concerning the allocation of "free stock" in connection with the merger, Sidhu either responded affirmatively that he would transfer shares in accordance with those instructions or remained silent as to the fact that he had no intention of transferring shares to Weiwei Gao.  Thus, in each of Sidhu's responses to Zhi Yang, Sidhu falsely and fraudulently represented, by misrepresented by omission, that he intended to transfer shares to Weiwei Gao and to honor the Fee Sharing Agreement.  Under the circumstances, Sidhu should have informed Weiwei Gao, through Zhi Yang, that Sidhu

had no intention to transfer securities to Weiwei Gao.  Thus, by his affirmative misstatements and omissions, Sidhu falsely and fraudulently represented to Weiwei Gao, through Zhi Yang, that Sidhu would transfer the shares to Weiwei Gao.

51. Upon information and belief, Sidhu made all of those false representations and omissions with actual intent to deceive, manipulate, and defraud Weiwei Gao. Sidhu's scienter can be inferred from the fact that he had multiple opportunities to inform Zhi Yang that he had no intention to transfer securities to Weiwei Gao, but on each of those occasions chose to either confirm Zhi Yang's understanding that Weiwei Gao *would* receive securities, or remained silent.  Thus, Sidhu's repeated reinforcement of Zhi Yang's understanding, both explicitly and by omission, strongly supports the contention that Sidhu's representations were false from the outset.

52. Moreover, scienter can be inferred from the fact that Sidhu never revealed to Zhi Yang that Sidhu intended to transfer any shares to his relative, Amarjit Sidhu, and business partner, Gill.  Each of the several times that Zhi Yang transmitted a list to Sidhu indicating the identity of the recipients, Sidhu never responded that he intended to transfer shares to Amarjit Sidhu and Gill.  Instead, he concealed that information from Zhi Yang and Weiwei Gao throughout the transaction.

53. Scienter can also be inferred from the fact that Sidhu likely benefitted personally from the misrepresentation by diverting shares to his relative, who shares an address with Sidhu in British Columbia, and to his business partner.  At the very least, Sidhu conveyed a previously secret benefit on two close associates at the expense of Weiwei Gao.

54. Finally, upon information and belief, Sidhu has engaged in similar fraudulent conduct with respect to the registered securities of at least one other United States company, failing to deliver securities in accordance with his agreement and representations.  Therefore, Sidhu appears to be engaged in a pattern and practice of false and fraudulent misrepresentations and material omissions with respect to the transfer of registered securities.

55. Weiwei Gao reasonably relied upon Sidhu's representation that Sidhu would transfer shares to Weiwei Gao as provided for in the Fee Sharing Agreement.  Zhi Yang was informed by a colleague that Sidhu had previously engaged in similar transactions and was knowledgeable in the field of reverse mergers.  Sidhu therefore came recommended, and Weiwei Gao had no reason to doubt his veracity.

56. Both Weiwei Gao and Zhi Yang, her representative, would have refused to deal with Sidhu had they known that his representations were false and fraudulent.  Sidhu insinuated himself into a merger transaction involving the transfer of registered securities, and fraudulently altered the equity ownership of a company with registered securities, by making those false and fraudulent misrepresentations and material omissions.

57. Weiwei Gao was damaged by Sidhu's false and fraudulent representations in that she, in direct reliance upon Sidhu's statements, worked to introduce Zhongbao, thorough its financial advisors, to Sidhu and, through Zhi Yang, to consummate the merger Because of Sidhu's false and duplicitous statements and omissions, however, Weiwei Gao received none of the shares to which she was entitled.

58. By virtue of the foregoing, Plaintiff is entitled to one or more of the following remedies:

(a)    judgment in favor of the Plaintiff, and against Defendant Sidhu, requiring Sidhu to transfer to Plaintiff split-adjusted securities in the Merged Company equal in number to the securities that Plaintiff was entitled to receive under the Fee Sharing Agreement;

(b)    imposition of a constructive trust over the securities unlawfully transferred by Sidhu to Amarjit Sidhu and Gill; and/or

(c)    damages, to be determined at trial, in an amount equal to the value of the securities that Plaintiff was entitled to receive pursuant to the Fee Sharing Agreement; plus

(d)    costs and attorneys' fees as provided;

(e)    pre- and post-judgment interest to the fullest extent permitted by law; and

(f)    such other relief as this Court deems just and proper.

**Third Cause of Action:**
**<u>Common Law Fraud</u>**
**(Against Gary Sidhu)**

59. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs, which are incorporated herein.

60. By virtue of the foregoing, Plaintiff is entitled to one or more of the following remedies:

(a)    judgment in favor of the Plaintiff, and against Defendant Sidhu, requiring Sidhu to transfer to Plaintiff split-adjusted securities in the Merged Company equal in number to the securities that Plaintiff was entitled to receive under the Fee Sharing Agreement;

(b)     imposition of a constructive trust over the securities unlawfully transferred by Sidhu to Amarjit Sidhu and Gill; and/or

(c)     damages, to be determined at trial, in an amount equal to the value of the securities that Plaintiff was entitled to receive pursuant to the Fee Sharing Agreement; plus

(d)     costs and attorneys' fees as provided;

(e)     pre- and post-judgment interest to the fullest extent permitted by law; and

(f)     such other relief as this Court deems just and proper.

**Fourth Cause of Action:**
**Quantum Meruit**
**(Against Gary Sidhu)**

61. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs, which are incorporated herein.

62. Weiwei Gao performed services in good faith, namely the introduction of Sidhu to Zhongbao's financial advisor, and rendering assistance, through her Representative, Zhi Yang, in the consummation of the merger.

63. Sidhu knowingly and willingly accepted those services, and the benefits thereof, by exploiting the introduction provided to him by Weiwei Gao, and working closely with Zhi Yang to close the merger.

64. Weiwei Gao reasonably expected that she would be compensated for her services in connection with the merger.

65. By virtue of the foregoing, Weiwei Gao is entitled to judgment against Sidhu for *quantum meruit* in the amount of the reasonable value of the services provided, as determined at trial.

**Fifth Cause of Action:**
**Fraudulent Conveyance**
**(Against All Defendants)**

66. Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs, which are incorporated herein.

67. The transfer of securities by Defendant Sidhu to Defendants Amarjit Sidhu and Gill was done with the actual intent to hinder, delay, or defraud Sidhu's creditor, Weiwei Gao.

68. By virtue of the foregoing, Plaintiff is entitled to judgment setting aside and annulling the transfer of shares to Defendants Amarjit Sidhu and Gill, and is further entitled to attach and levy execution upon such shares to the extent necessary to satisfy Plaintiff's claim.

69. By virtue of the foregoing, Plaintiff is also entitled to costs and attorneys' fees in connection with her efforts to avoid the fraudulent transfer(s).

**Sixth Cause of Action:**
**Aiding and Abetting Fraudulent Conveyance**
**(Against Armajit Sidhu and Sarbjit Gill)**

70.  Plaintiff repeats, reiterates, and realleges each of the allegations in the foregoing paragraphs, which are incorporated herein.

71. As described above, Defendant Sidhu fraudulently transferred securities to Defendants Defendants Amarjit Sidhu and Gill with the actual intent to hinder, delay, and defraud Plaintiff Weiwei Gao.

72. Upon information and belief, based upon their close relationships with Sidhu, Defendants Amarjit Sidhu and Gill had actual knowledge of Defendant Sidhu's plan, scheme, and intent to hinder, delay, and defraud Weiwei Gao.

73. By agreeing to be the transferees for the securities that rightfully should have been transferred to Weiwei Gao, and by otherwise assisting Defendant Sidhu in the fraud, Defendants Amarjit Sidhu and Gill substantially assisted Sidhu in the fraudulent conveyance.

74. By virtue of the foregoing, Defendants Amarjit Sidhu and Gill are liable for aiding and abetting a fraudulent conveyance.

75. By virtue of the foregoing, Plaintiff Weiwei Gao is entitled to judgment against Defendants Amarjit Sidhu and Gill setting aside the transfer or, in the alternative, awarding damages in an amount equal to the value of her claim against Sidhu, plus costs and attorneys' fees.

## Demand for Relief

WHEREFORE, Plaintiff demands judgment in her favor, and against the Defendants, as follows:

(a)  requiring Sidhu to transfer to Plaintiff split-adjusted securities in the Merged Company equal in number to the securities that Plaintiff was entitled to receive under the Fee Sharing Agreement;

(b)  imposition of a constructive trust over the securities unlawfully transferred by Sidhu to Amarjit Sidhu and Gill; and/or

(c)  damages, to be determined at trial, in an amount equal to the value of the securities that Plaintiff was entitled to receive pursuant to the Fee Sharing Agreement; plus

(d)  costs and attorneys' fees;

(e)  pre- and post-judgment interest to the fullest extent permitted by law; and

    (f)     such other relief as this Court deems just and proper.

Dated: New York, New York
       April 19, 2011

GREGORY A. BLUE, P.C.

By: s/ Gregory A. Blue
      Gregory A. Blue
405 Lexington Avenue, Suite 2600
New York, New York 10174
Telephone: (646) 351-0006
Facsimile: (212) 208-6874
Email: blue@bluelegal.us

*Attorney for Plaintiff Weiwei Gao*