USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/13/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
                        :

WEIWEI GAO,                     :        11 Civ. 2711 (WHP) (JCF)

           PLAINTIFF,       :

                        :        MEMORANDUM AND ORDER

      -against-              :

GARY SIDHU, also known as HARP,  :

          Defendant.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

        Plaintiff Weiwei Gao filed this action for breach of contract and obtained a default judgment against Defendant Gary Sidhu.  The action was referred to Magistrate Judge James C. Francis IV for a damages inquest.  Magistrate Judge Francis held a hearing on February 22, 2013.  While both parties were represented by counsel, only Gao offered evidence.

        On May 7, 2013, Magistrate Judge Francis issued the annexed report and recommendation (the "Report") recommending that a judgment be entered against Sidhu in the amount of $173,875 in compensatory damages, plus interest, attorney's fees, and costs.  Sidhu objects.  For the reasons set forth below, this Court affirms and adopts the Report.

## DISCUSSION

### Standard of Review

        This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). "This Court reviews de novo those parts of the Report to which objections are made and reviews the remainder for clear error on the face of the record." Strujan v. Teachers Coll. Columbia Univ., No. 08 Civ. 9589 (WHP)

(HBP), 2010 WL 3466251, at *2 (S.D.N.Y. Sept. 3, 2010) (citing 28 U.S.C. § 636(b)(1); Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y.2008)). But "when a party makes only generalized or conclusory objections, or simply reiterates his original arguments," only the clear error standard applies. Fabricio v. Artus, 2009 WL 928039, at *1 (S.D.N.Y. Mar. 12, 2009). "[A] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." Ortiz, 558 F. Supp. 2d at 451. "Rather, it must be an earnest protest that the magistrate judge's report contains a fundamental error of fact or reasoning requiring a fresh look at the issue." Strujan, 2010 WL 3466251, at *2.

Defendant's Objections

First, Sidhu argues that Gao's expert report was not admissible under Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993). But Defendant waived this argument by failing to raise it in front of Magistrate Judge Francis. See Ortiz, 558 F. Supp. 2d at 451. Moreover, Defendant offers only a bullet point list of critiques, without any explanation as to why the expert report falls short of the Daubert standard. Such conclusory objections do not suffice. See Fabricio, 2009 WL 928039, at *1.

Second, Defendant argues that the Report "turned the evidentiary standard on its head," improperly placing the burden of proof on him by accepting Gao's valuation, in part, because Sidhu did not put forward his own affirmative evidence. Def's. Objections to Mag. Judge's Report & Recommendations ("Def's. Objections") at 2, 5. But Plaintiff met his burden by submitting an expert valuation the magistrate judge found "was determined by well-established valuation methods." Report at 5-6.

Finally, Sidhu objects to the Report's award of attorney's fees in the amount of 25% of compensatory damages on the sole basis that "the expert report submitted by plaintiff

does not support the award of any compensatory damages." Def's. Objections at 6. As

discussed, the compensatory damages award was proper, and therefore so was the award of

attorney's fees.

## CONCLUSION

For the reasons stated above, this Court adopts the well-reasoned report and

recommendation of Magistrate Judge James C. Francis, dated May 7, 2013. It is therefore

ORDERED that the following judgment be entered in favor of Plaintiff against Defendant:

1. Compensatory damages in the amount of $212,591.81, consisting of a principal amount of $173,875 with interest calculated at nine percent per year, compounded annually, running from February 14, 2011 through today;

2. Attorney's fees in the amount of $53,147.95, calculated as 25% of compensatory damages (including interest); and

3. Costs in the amount of $5,642.10.

The Clerk of Court is directed to enter judgment and mark this case closed.


Dated: June 12, 2013
       New York, New York

                                    SO ORDERED:



                                    _____
                                    WILLIAM H. PAULEY III
                                    U.S.D.J.


*Copies to:*

Gregory A. Blue, Esq.
Dilworth Paxson LLP
99 Park Avenue, Suite 320
New York, NY 10016
*Counsel for Plaintiff*

Rosanne E. Felicello, Esq.
Felicello Law P.C.
605 Third Avenue, Suite 1600
New York, NY  10036
*Counsel for Defendant*

Magistrate Judge James C. Francis IV

```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
WEIWEI GAO,                          : 11 Civ. 2711 (WHP) (JCF)
                                     :
              Plaintiff,             :      REPORT AND
                                     :   RECOMMENDATION
        - against -                  :
                                     :
GARY SIDHU, also known as HARP,      :
                                     :
              Defendant.             :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE WILLIAM H. PAULEY III, U.S.D.J
```

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/13

This is an action brought by the plaintiff, Weiwei Gao, against Gary Sidhu, seeking damages for breach of contract and fraud related to a contract to deliver securities as payment for services rendered brokering a transaction. Following entry of summary judgment on liability, the case was referred to me for an inquest, and a hearing was held on February 22, 2013. Both parties sent representatives to the inquest, but only the plaintiff presented an expert valuation on damages. The findings below are therefore based on the evidence presented at the hearing and on the information submitted by the plaintiff.

Background

In October 2010, the plaintiff, through her U.S.-based representative, Zhi Yang, approached Gary Sidhu regarding a business proposal, specifically a reverse merger between a Chinese real estate company, Chongqing Zhongbao Investment (Group) Stock Co., Ltd. ("Zhongbao"), and a publicly-traded American company (the "Merger"). (Amended Complaint ("Am. Compl."), ¶¶ 1, 18). Mr. Sidhu was asked to identify an appropriate public company to be

1

merged with Zhongbao. (Am. Compl., ¶ 18). The plaintiff was to make the introduction and facilitate the transaction, and would receive a fee in consideration for her efforts. (Am. Compl., ¶ 19).

Mr. Sidhu agreed to the proposal and the parties committed the agreement to writing in a "Fee Sharing Agreement" dated October 29, 2010. (Am. Compl., ¶ 20). The Fee Sharing Agreement contained provisions for the division of the remaining equity in the post-merger company. (Am. Compl., ¶ 24). According to the agreement, the plaintiff was to receive 34,775 post-merger, pre-split shares. (Am. Compl., ¶ 30).

The Merger was consummated on February 11, 2011. (Am. Compl., ¶ 32). On February 14, 2011, Zhi Yang sent an e-mail to Mr. Sidhu directing him to send stock certificates to specified individuals, in the amounts indicated. (Am. Compl., ¶ 33). Despite numerous attempts to encourage Mr. Sidhu to make the transfer, he never conveyed shares to the plaintiff. (Am. Compl., ¶¶ 33-35). On April 20, 2011, the plaintiff commenced this action against Mr. Sidhu.

Discussion

   A.   Jurisdiction

Subject matter jurisdiction in this case is based on plaintiff's federal securities law claims pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. Mr. Sidhu is

subject to personal jurisdiction in this Court pursuant to the Fee Sharing Agreement.  (Am. Compl., ¶ 14).

B.   Liability

"Where an inquest is conducted following a default judgment, it is generally necessary for the Court to determine whether the allegations of the complaint, taken as true, are sufficient to establish the defendant's liability." PSG Poker, LLC v. DeRosa-Grund, No. 06 Civ. 1104, 2008 WL 2755835, at *3 (S.D.N.Y. July 14, 2008).   In this case, the Court has already found that the plaintiff has sufficiently stated a claim on which relief can be granted. (Order dated Dec. 21, 2011; Transcript of Default Hearing dated Aug. 9, 2012 at 10-11; Default Judgment dated Aug. 13, 2012).

C.   Damages

The parties have agreed that New York law governs any claims arising out of the Fee Sharing Agreement.   (Am. Compl., ¶¶ 25, 61(g)).  Parties to international contracts are free to choose what jurisdiction's laws apply to their dealings, and when they do so, federal courts generally enforce the parties' selection. Ruby v. Corporation of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993). Thus, New York applies to the plaintiff's claims.

1.   Breach of Contract

a. Compensatory Damages

Under New York Law, damages for breach of a contract should put the non-breaching party in the same economic position it would have enjoyed had the breaching party fully performed the contract. See Hallingby v. Hallingby, 693 F. Supp. 2d 360, 368-69 (S.D.N.Y.

3

2010) (citing Bausch & Lomb Inc. v. Bressler, 977 F.2d 720, 728-29 (2d Cir. 1992)). The non-breaching party is entitled to recover all compensatory damages that may be ascertained with reasonable certainty. Wechsler v. Hunt Health Systems, Ltd., 330 F. Supp. 2d 383, 424-25 (S.D.N.Y. 2004). Here, the contract to deliver 34,775 shares was breached by Mr. Sidhu, and thus he is liable for the entire contract amount.

Damages for breach of contract are ordinarily ascertained as of the date of the breach. Boyce v. Soundview Technology Group, Inc., 464 F.3d 376, 384 (2d Cir. 2006); see also Maxim Group LLC v. Life Partners Holdings, Inc., 690 F. Supp. 2d 293, 299 (S.D.N.Y. 2010) ("This rule applies equally to cases where the alleged breach involves the failure by one party to deliver shares of stock to the other party."). Here, the breach occurred when Mr. Sidhu failed to deliver shares on February 14, 2011, and therefore damages should be ascertained as of that date. Where "'the existence of damage is certain, and the only uncertainty is as to its amount, . . . the burden of uncertainty as to the amount of damage is upon the wrongdoer.'" Schonfeld v. Hilliard, 218 F.3d 164, 182 (2d Cir. 2000) (alteration in original) (emphasis omitted) (quoting Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 926 (2d Cir. 1977)).

Determining value is a factual inquiry and valuation is necessarily an approximation. Boyce, 464 F.3d at 387; see also Eisenberg v. Commissioner of Internal Revenue, 155 F.3d 50, 53 (2d Cir. 1998) (noting that for closely held corporations for which

4

there is no public trading market, valuation of stock is based on
variety of factors). "If no prior sales history is available,
experts may give their opinion of the asset's value; and evidence
of sales of comparable assets may be introduced." Schonfeld, 218
F.3d at 178. Here, the plaintiff submitted evidence of damages in
the form of an expert report from Levensohn Venture Partners
("LVP") concerning the value of the stock that Mr. Sidhu failed to
deliver. (Proposed Findings of Fact and Conclusions of Law
("Proposed Findings"), ¶ 28; Report of Levensohn Venture Partners
LLC dated Sept. 14, 2012 ("LVP Report"), attached as Exh. A to
Declaration of Stephen V. Reale dated Sept. 14, 2012 ("Reale
Decl.")). The LVP valuation utilized three methods to determine
the value of the stock: discounted cash flow ("DCF"), comparable
companies analysis, and an analysis of the company's net asset
value ("NAV"). (Proposed Findings, ¶ 28; LVP Report at 3); see
e.g., Lippe v. Bairnco Corp., 288 B.R. 678, 689 (S.D.N.Y. 2003)
("Many authorities recognize that the most reliable method for
determining the value of a business is the discounted cash flow
("DCF") method.").

   The LVP analysis concluded that the value of publicly traded
shares should have been in the range of $3.50 to $6.50 with a
midpoint of $5.00 per share. (LVP Report at 3). At the inquest,
the defendant raised concerns about LVP's valuation methods.
(Transcript of Inquest Proceedings dated Feb. 22, 2013 ("Tr.") at
5-55). However, Mr. Sidhu failed to produce any independent
suggested valuation. The LVP expert valuation was determined by

5

well-established valuation methods and, absent any affirmative evidence from the defendant, I have no basis for discounting the valuation of $5.00 per share. Therefore, the plaintiff has demonstrated that she is entitled to compensatory damages in the amount of $173,875 (34,775 shares x $5.00 = $173,875).

### b. Interest

A party found liable for breach of contract is also responsible for prejudgment interest under New York Law, CPLR § 5001(a); see Graham v. James, 144 F.3d 229, 239 (2d Cir. 1998), calculated at the statutory rate of nine percent per year, compounded annually, CPLR § 5004; see Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90 (2d Cir. 1998). Interest must be computed from "the earliest ascertainable date the cause of action existed." CPLR § 5001(b). Here, on February 14, 2011, the plaintiff's agent delivered to the defendant a list of individuals who were to receive stock, and the defendant failed to deliver those shares. Thus, the earliest possible date the plaintiff had a valid claim against Mr. Sidhu was on that date. Accordingly, the plaintiff is entitled to interest at the rate of nine percent, compounded annually, on the principal amount of $173,875 from February 14, 2011, through the date of judgment.

### c. Attorneys' Fees and Costs

Pursuant to the Fee Sharing Agreement,

> If any action or other proceeding is brought for the enforcement of this Agreement or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provision of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorney's fees and other

6

costs incurred in such action or proceeding in addition
to any other relief to which they may be entitled.

(Fee Sharing Agreement, attached as Exh. D to Declaration of
Gregory A. Blue dated Sept. 14, 2012 ("Blue Decl."), ¶ 4.H). Here,
the plaintiff was clearly the prevailing party.

Under New York law, a contract provision that one party to a
contract pay the other party's attorneys' fees in the event of
breach is enforceable "so long as those amounts are not
unreasonable." F.H. Krear & Co. v. Nineteen Named Trustees, 810
F.2d 1250, 1263 (2d Cir. 1987); see also Wells Fargo Bank N.W.,
N.A. v. Taca International Airlines, S.A., 315 F. Supp. 2d 347, 353
(S.D.N.Y. 2003)   "Because a fee-shifting clause can produce
perverse incentives for a litigant . . . courts must scrutinize fee
requests to ascertain whether they are reasonable." Diamond D.
Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992)
(internal citation omitted); see also Bobrow Palumbo Sales, Inc. v.
Broan-Nutone, LLC, 549 F. Supp. 2d 274, 277-78 (E.D.N.Y. 2008)
(holding that courts should review reasonableness of attorney's
fees in breach of contract case even where contract provides for
payment of fees by losing party).  In particular, a court should
ask "whether the fee arrangement is 'grossly disproportionate to
the arrangement the plaintiff would have been expected to make with
counsel in the absence of a fee-shifting agreement.'" Diamond, 979
F.2d at 20 (quoting F.H. Krear, 810 F.2d at 1263).  For example, in
F.H. Krear, the court found attorneys' fees calculated by hourly
billing to be unreasonable "in light of the one-third contingent
fee arrangement th[e] plaintiff in fact made with [its attorney]

7

for other litigation involving the Contract at issue." 810 F.2d at 1264.

Here, the plaintiff entered into a contingency fee arrangement pursuant to which he agreed to pay counsel 25% of any recovery. (Retainer Agreement dated April 7, 2011, attached as Exh. A to Blue Decl. at 1; Proposed Findings, ¶ 37).  The defendant has not submitted any papers in opposition and there is no evidence that the plaintiff would not have entered into the contingency fee arrangement had there not been a fee-shifting arrangement.

However, while the plaintiff's contingency fee agreement is an important factor in determining the reasonableness of the fees, see Diamond, 979 F.2d at 20, it is not dispositive.  Other relevant factors include "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability, and reputation; the customary fee charged by the Bar for similar services; and the amount involved." F.H. Krear, 810 F.2d at 1263 (internal quotation marks omitted). In determining the reasonableness of the attorneys' fees, parties generally submit "'contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done.'"  Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009) (alteration in original) (quoting New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983)).

Here, Gregory Blue, plaintiff's counsel, has submitted contemporaneous time records in connection with this case for the

8

period from April 1, 2011, to September 14, 2012. (Time Records, attached as Exh. B to Blue Decl.). According to these records, Mr. Blue was responsible for all aspects of the case from start to finish, including drafting the complaint, conducting discovery, preparing and responding to motions, and preparing for and appearing at hearings. (Time Records). In doing so, Mr. Blue expended a total of 104.6 hours. (Time Records). His records are sufficiently specific and detailed to provide an understanding of the work involved.

Mr. Blue represents that his customary hourly rate is $550.00. (Blue Decl., ¶ 2). He has previously charged this rate in connection with litigation in this district, and judges in the United States Bankruptcy Court for the Souther District of New York have approved compensation for his work at that rate. (Blue Decl., ¶ 2). Further, this rate is within the range of what courts have considered reasonable in commercial litigation in this district. See, e.g., CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A., No. 07 Civ. 11078, 2011 WL 4526132, at *3 (S.D.N.Y. Sept. 29, 2011) (finding $632 to be reasonable rate); In re AOL Time Warner Shareholder Derivative Litigation, No. 02 Civ. 6302, 2010 WL 363113, at *13 (S.D.N.Y. 2010) ($175 to $550 for associates and $300 to $850 for partners); In re Talik, Inc. Securities Litigation, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) ($700 to $750 per hour); Silverblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 433 (S.D.N.Y. 2007) ($675 per hour). The defendant has not proffered any evidence to suggest that Mr. Blue's rate was unreasonable.

Mr. Blue's charges up to September 2012, billed at his usual hourly rate, amount to $57,540.  (Blue Decl., ¶ 3).  Notably, this amount, which appears reasonable, is higher than that arrived at by using the contingency fee percentage agreed upon between the plaintiff and her counsel.  Taking into account the contingency fee arrangement and all the relevant factors, attorneys' fees of 25% of the total compensatory damages award, including interest, is reasonable and should be granted in full.  See 3H Enterprises, Inc. v. Murray, 994 F. Supp. 403, 405 (finding contingency fee of one-third of recovery reasonable under fee-shifting contract provision).

The plaintiff also seeks $5,642.10 in costs.  This request includes $5,000 for the expert valuation performed by LVP (Reale Decl., ¶ 3) and $642.10 for Mr. Blue's out of pocket expenses in connection with this action, (Blue Decl., ¶ 4).  These expenses were reasonable and necessary, and the Fee Sharing Agreement provides for recovery of "other costs incurred."  (Fee Sharing Agreement, ¶ 4.H).  Therefore the request for costs should be granted in full.

### 2.  Securities Fraud

While the defendant is liable for fraud in connection with the contract to deliver securities, the damages for breach of contract are adequate compensation.  The plaintiff acknowledges that the measure of damages on her securities fraud claim is essentially the same as it is for breach of contract.  (Proposed Findings, ¶ 24).  Accordingly, the plaintiff is entitled to no additional damages

10

under the securities fraud claim.

Conclusion

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff and against Gary Sidhu for $173,875 in compensatory damages, together with interest calculated at the rate of nine percent per year, compounded annually, on a principle amount of $173,875 running from February 14, 2011 through the date of judgment ($210,757.97 as of May 7, 2013, and $50.94 per day thereafter). The plaintiff should also be awarded 25% of the total compensatory damages, or $52,689.49 as of May 7, 2013, and $5,642.10 in costs.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
        May 7, 2013

11

Copies mailed this date:

Gregory A. Blue
Dilworth Paxson LLP
99 Park Avenue, Suite 320
New York, New York  10016

Rosanne Felicello
Felicello Law P.C.
605 Third Avenue, Suite 1600
New York, New York  10036